**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**MARIA M.,**

**Plaintiff,**

**v.**

**Civil Action 3:25-cv-00451**
**Judge Michael J. Newman**
**Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Maria M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 7) and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

On August 11, 2023, Plaintiff filed applications for DIB and SSI alleging disability beginning October 1, 2021, due to history of carbon monoxide exposure, anxiety, depression, memory loss, anorexia, chest pains, heart attack and suicidal ideations. (R. at 256–72, 331). After her applications were denied initially and on reconsideration, Administrative Law Judge Gregory Kenyon ("the ALJ") held a hearing. (R. at 33–63). Ultimately, on February 26, 2025, he found Plaintiff is not disabled. (R. at 15–32). The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 29, 2025, (Doc. 1), and the Commissioner filed the administrative record on February 27, 2026. (Doc. 6). The matter is ripe for review. (*See* Docs. 7, 8, 9).

**A. The Administrative Record**

In his opinion, the ALJ summarized and evaluated Plaintiff's statements to the agency, hearing testimony, medical records, and symptoms. (R. at 23–25). The ALJ also summarized and evaluated the medical source opinions and prior administrative medical findings, including those of Ken Lovko, Ph.D., and Nicole Sampson, Ph.D. (R. at 25–26). Rather than repeat these summaries, the Undersigned will focus on the evidence pertinent to Plaintiff's assigned errors.

**B. The ALJ's Decision**

The ALJ found that Plaintiff engaged in substantial gainful activity since October 1, 2021, the alleged onset date, through at least April 1, 2023. (R. at 20–21). The ALJ further determined that Plaintiff has the following severe impairments: depression; anxiety disorder; and post-traumatic stress disorder (PTSD). (R. at 21). He also concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 21–22).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) simple, routine, repetitive tasks; (2) occasional contact with co-workers and supervisors; (3) no public contact; (4) no teamwork or tandem tasks; (5) no fast paced work; (6) no strict production quotas; (7) very little, if any, change in the work duties or the work routine from one day to the next and in which any changes would be explained prior to implementation.

(R. at 23).

When discussing Plaintiff's subjective complaints, the ALJ explained:

> [Plaintiff] alleged difficulty with memory, completing tasks, concentration, understanding, and following instructions (5E/5). She alleged that she does poorly at following written and spoken instructions (5E/5). She also alleged difficulty handling stress and changes in routine (5E/6). [Plaintiff] testified that she has crying spells three to four times per week (Testimony). She said she has difficulty with memory and focus (Testimony). She also said she no longer walks her dog and if she is not going into work, then she stays home (Testimony). She testified that at the time of the hearing that she was working part-time at Walgreens, and she has contact with customers, but she said she is frightened by the people unless they are elderly (Testimony). She also said that she has panic attacks all the time, every day (Testimony). [Plaintiff] testified that she has nightmares three or four times per month and flashbacks once per week (Testimony).
>
> After careful consideration of the evidence, the [ALJ] finds that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 23–24).

Based on the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform her past relevant work as a general duty nurse. (R. at 26). Still, relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform medium exertional, unskilled jobs that exist in significant numbers in the national economy, such as a store laborer, hand packager, or washer. (R. at 26–27). He thus concluded that Plaintiff has not been under a disability since October 1, 2021. (R. at 27–28).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff challenges the ALJ's evaluation of the State agency reviewer's opinions; contends the ALJ failed to fully develop the record; and says he fatally did not use the Drug Addiction & Alcoholism ("DAA") framework when considering marijuana as a "contributing factor." (Doc. 7 at 5–13). The Commissioner counters that the ALJ properly considered the prior administrative medical findings and explained why any limitations were not adopted in the RFC. (Doc. 8 at 4–9). The Commissioner also notes that the DAA framework does not apply here. (*Id.* at 9–10).

### A. The ALJ's Consideration of the State Agency Reviewer's Opinions

Plaintiff first claims the ALJ insufficiently explained his rejection of Dr. Lovko and Dr. Sampson's prior administrative medical findings. (Doc. 7 at 5–7). More specifically, Plaintiff challenges the ALJ's explanation of consistency when determining Plaintiff's residual functional capacity ("RFC"). (*Id.*). The Commissioner counters that the ALJ reasonably attended to both opinions. (Doc. 8). Upon review, the Undersigned finds no error.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner.

SSR 96-5p, 1996 WL 374183, at *1–2 (July 2, 1996). The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

The regulations expressly say that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a

[1] The regulations define prior administrative findings:

A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 404.1513(a)(2), (5).

benefits determination or decision and allow that the ALJ "may, but [is] not required to, explain how [she] considered" the other factors. *Id.* When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the prior administrative medical finding, the more persuasive the ALJ should find the prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(2). Still, the ALJ does not need to use "any specific phrasing to comply with the applicable regulations." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (noting that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim" (internal quotation omitted)).

At bottom, the ALJ's role is to articulate how he considered the prior administrative medical findings and how persuasive he found them to be. *See Holston v. Saul*, No. 1:20−CV−1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported his conclusion with substantial evidence. *Id.* at *14. Additionally, the Undersigned notes that "[t]he Sixth Circuit has made clear that an ALJ's decision must be read as a whole." *Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-CV-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, No. 2:18-CV-1250, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019) (considering the ALJ's discussion of plaintiff's depressive disorder at step two when determining if the RFC is supported).

As applied here, Ken Lovko, Ph.D., evaluated Plaintiff's mental impairments as part of the initial determination on Plaintiff's claim on October 25, 2023. (R. at 103–10). Dr. Lovko found that Plaintiff had a mild impairment in the "B Criteria" area of understanding, remembering, or applying information and moderate impairments of the areas of interacting with others; concentrate, persist, or maintain pace; and adapting or managing oneself. (R. at 107). As part of this review, Dr. Lovko assessed Plaintiff's mental residual functional capacity in which he found Plaintiff could understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; and she is able to deal with routine changes in a work setting. (R. at 110). Dr. Lovko also found that Plaintiff would be able to manage occasional contact with the public; but sustained, intensive, interpersonal contact would be precluded. (*Id.*). Consequently, Dr. Lovko opined that Plaintiff would "appear to work best alone, in semi-isolation from others or as part of a small group." (*Id.*). Lastly, Dr. Lovko concluded that the totality of the medical evidence of record suggests that Plaintiff seems to be able to maintain at least a minimal level of relationship with others. (*Id.*).

Nicole Sampson, Ph.D., reviewed Plaintiff's file on reconsideration in January 2024, and determined that Plaintiff is limited to no tasks that require fast production paced demands or quotas. (R. at 131). She opined Plaintiff might miss one to two days per month due to anxiety and mood instability. (*Id.*). And she found Plaintiff retains the capacity to carry out simple instructions; jobs that have occasional contact with the general public and coworkers; and to occasional changes that can be explained in advance and allowed time to adjust before implementation. (R. at 131–32).

Generally speaking, the ALJ adjudged Dr. Lovko's opinion "minimally persuasive, to the extent it supports no more than moderate limitations" and Dr. Sampson's opinion "somewhat

persuasive." (R. at 26). More specifically, he adopted the majority of their findings and limitations in Plaintiff's RFC, including that Plaintiff is limited to tasks that do not require fast production or quotas and only simple instructions, no public contact, no teamwork or tandem tasks, occasional contact with coworkers and supervisors, and very little change in work duties or routine daily. (R. at 23, 25). Still, the ALJ found aspects of the prior administrative medical findings not well supported or consistent with the objective evidence. In finding Dr. Lovko's opinions supporting more than moderate limitations minimally persuasive, he reasoned that Dr. Lovko's suggested limitations are "not in vocationally relevant terms and are vague." (R. at 25–26). He further found Dr. Lovko's opinion that Plaintiff would "appear" to "work best" alone was not well-supported or consistent with the objective evidence because the residual functional capacity is the maximum the Plaintiff can do, not the "best." (R. at 25–26, 110; *see also* R. at 24 (observing Plaintiff has been able to work during the relevant period)).

He was also unpersuaded by Dr. Sampson's findings that Plaintiff might miss one to two days per month of work due to anxiety or mood instability and that she would need extra time to adjust to ordinary workplace changes. (R. 25–26). He discussed that Plaintiff was psychiatrically hospitalized after abusing alcohol, but she later admitted that she was out of her anxiety and depression medication at that time, and she has been doing better since resuming her medication regimen. (R. at 25; *see also* R. at 24 (citing 401–02, 436, 1068–69, 1072–73)). He explained Plaintiff's objective examination findings of record showing normal functioning and no more than moderate impairments. (R. at 25 (citing 399, 405, 415–16, 419, 423, 425, 427, 437, 439, 444, 464, 584, 587, 589, 593, 601, 622, 664, 677–78, 689, 692, 696, 1051–52, 1071–72, 1083, 1085–86)). The ALJ further analyzed that outside of that one hospitalization she has been able to work and has not required recurrent hospitalizations or more than conservative treatment. (R. 26; *see also*

R. at 24 (citing 280–88, 315–23, 1055). The ALJ also discussed Plaintiff's continued use of marijuana, despite doctors warning her of the effects of alcohol and marijuana on her mental health. (R. at 25, 1073). All this, the ALJ concluded, was inconsistent with the doctor's opinions that Plaintiff might miss one to two days of work per month or that she would need extra time to adjust to ordinary workplace changes. (R. at 25).

Now, Plaintiff argues that the ALJ erred when finding the opinions of Dr. Lovko and Dr. Sampson inconsistent with the objective evidence. She specifically takes issue with the ALJ's determination that Dr. Sampson's finding, that Plaintiff might miss one or two days of work a month due to her impairments, is not "supported or consistent with objective evidence." (Doc. 7 at 6; R. at 25). But the ALJ explained why he found Dr. Sampson's limitation inconsistent with objective findings when discussing Plaintiff's nonrecurrent psychiatric hospitalizations, improvement with medication, normal functioning, complication with substance use, and conservative treatments as discussed above. (R. at 24–26). Thus, although the ALJ did not adopt Dr. Sampson's proposed limitations wholesale, the ALJ considered them and explained how they were inconsistent with the record. *Green v. Comm'r of Soc. Sec.*, No. 2:20-CV-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020), *report and recommendation adopted sub nom. Green v. Comm'r of Soc. Sec.*, No. 2:20-CV-232, 2020 WL 7395330 (S.D. Ohio Dec. 17, 2020) (finding that regardless of the weight assigned to a medical source opinion, the ALJ is not required to adopt all of a medical source's proposed limitations). In all, the ALJ evaluated the supportability and consistency of the State agency reviewers' opinions and detailed the evidence underlying the finding that the opinions were not persuasive with respect to the certain aspects of Plaintiff's limitations for work activities.

Still, Plaintiff believes the ALJ should have given more attention to other evidence in the record. She says the ALJ's characterization of the clinical evidence he highlighted was "highly selective and not representative of the overall findings." (Doc. 7 at 5). She cites treatment notes which discuss the Plaintiff's subjective statements to her doctors that she is unable to keep a job because of her anxiety and missing work due to depression. (Doc. 7 at 5–6 (citing R. at 405, 423, 584, 589, 1072, 1086)). She further argues that substantiality of evidence must take into account whatever in the record fairly detracts from its weight, and the ALJ did not. (Doc. 7 at 6 (quoting *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 641 (6th Cir. 2013)). Essentially, Plaintiff argues the ALJ cherry-picked the record.

As this Court has recognized, "it is improper for the ALJ to 'cherry-pick' a sentence in the record to support his conclusion, which should be based instead on the record as a whole." *McKenzie v. Comm'r of Soc. Sec.*, No. 2:16-CV-544, 2017 WL 2274243, at *7 (S.D. Ohio May 25, 2017) (collecting cases). But "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (holding that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). "The argument that the ALJ mischaracterized or 'cherry-picked' the record is frequently made and seldom successful, because 'the same process can be described more neutrally as weighing the evidence.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:14-CV-984, 2015 WL 7460080, at *3 (W.D. Mich. Nov. 24, 2015) (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

That is what the ALJ did here. He thoroughly reviewed the medical record and opinion evidence regarding Plaintiff's mental impairments. (R. at 24–26). Plaintiff identifies records reflecting occasions when Plaintiff presented with "depressed mood and/or affect, constricted affect, anxious mood, angry mood and affect, agitated behavior, rapid and pressured speech, restricted affect, sad mood, tearfulness, anxiety, "poor to fair" insight and judgment, "impulsive and inappropriate" judgment, and suicidal ideation and attempts, that the ALJ allegedly ignored. (Doc. 7 at 5–6 (citing R. at 405, 423, 584, 589, 1072, 1086)). But the ALJ discussed those same medical records throughout his opinion. (R. at 22, 24–25 ("However, some notes indicate that the claimant presents as minimally depressed and tearful (1F/45). Moreover, the opinion evidence indicates a moderate limitation in this area (1A; 6A)."; "However, at times, the claimant showed poor or poor to fair insight and limited judgment (1F/14, 73). At other times, the claimant showed "good" judgment (3F/6). Moreover, the opinion evidence indicates a moderate limitation in this area (1A; 6A).")). Therefore, the ALJ did not ignore the material, nor did he "pick and choose" only the evidence that supported his position. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795 (S.D. Ohio Jan. 19, 2023), *report and recommendation adopted sub nom. Mark D. v. Comm'r of the Soc. Sec. Admin.*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023); see also *Durio v. Comm'r of Soc. Sec.*, 1996 WL 169362 at *2 (6th Cir. Apr. 10, 1996) (explaining that the ALJ did not ignore evidence where he discussed it in the decision). He, instead, weighed the evidence and resolved any conflicts as required under the regulations.

In the end, Plaintiff's argument is an invitation to reweigh the evidence. "[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion." *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017). And "[t]he findings of the Commissioner are not subject to reversal

merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (rejecting an argument that the ALJ mischaracterized findings and noting "as long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion"). Because the Court finds the ALJ met the minimum standard of articulation for consistency and his conclusion is supported by substantial evidence, Plaintiff's assignment of error is meritless.

**B. The ALJ's Requirement to Fully and Fairly Develop the Record**

Next, Plaintiff claims that the ALJ failed insufficiently developed the record because he did not obtain a proper opinion from a medical source and instead improperly substituted his own lay judgment. This error stems from the ALJ's finding of Dr. Lovko and Dr. Sampson's opinions inconsistent with objective evidence as discussed above. Specifically, she says that since the ALJ concluded that the opinions were inconsistent with the record and used vocationally vague language, the ALJ should have made efforts to obtain additional evidence. (Doc. 7 at 10).

Typically, undeveloped record occurs when an ALJ makes a finding of work-related limitations based on no medical source or opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence. *See, e.g.*, *Kizys v. Comm'r of Soc. Sec.*, 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). "The 'key inquiry' is whether the ALJ "fully and fairly developed the record through a conscientious probing of all relevant facts." *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-CV-354, 2017 WL 489746, at *4 (S.D. Ohio Feb. 7, 2017), *report and recommendation adopted sub nom. Bryant v. Berryhill*, No. 3:15-CV-354, 2017 WL 713564 (S.D. Ohio Feb. 22, 2017) (quoting *Williams v. Astrue*, 1:11-CV-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012)). The ALJ has an obligation to develop the

record, but this does not mean that an ALJ must probe into all possible alternatives to his well-supported conclusions. *See Paige v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV1249, 2021 WL 2952811, at *6 (N.D. Ohio July 14, 2021) ("ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." (internal citations and quotations omitted)). More importantly, the duty to develop the record "does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation." *Campbell v. Comm'r of Soc. Sec.*, No. 1:12CV1406, 2013 WL 1908145, at *8 (N.D. Ohio May 7, 2013) ("At the hearing, counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records.").

Here, the ALJ's RFC is largely consistent with Dr. Lovko and Dr. Sampson's opinions though he did not find them completely persuasive. The ALJ stated that Dr. Lovko's suggested limitations were "not in vocationally relevant terms and are vague," yet he still adopted a version of all of Dr. Lovko's limitations just not verbatim. (R. at 23, 25–26 (finding that Plaintiff does have a limitation for no teamwork or tandem tasks though he scrutinized Dr. Lovko's find that she appears to work best alone)); *see, e.g.*, *Tanya S. v. Comm'r of Soc. Sec.*, No. 2:26-CV-00056, 2026 WL 2267454, at *2 (S.D. Ohio Aug. 6, 2026) ("[A]n ALJ is not required to adopt a medical opinion verbatim."); *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

Further in finding the Stage agency reviewer's opinions not entirely persuasive, the ALJ made a conscientious probing of all relevant facts as evidenced by his thorough analysis of the record when crafting the RFC, as discussed above. (R. at 23–26). The ALJ permissibly adopted

the prior administrative medical filings in part. *See Hericks v. Astrue*, No. 1:10-CV-900, 2012 WL 161105, at *7 (S.D. Ohio Jan. 19, 2012), *report and recommendation adopted sub nom. Hericks v. Comm'r of Soc. Sec.*, No. 1:10-CV-900, 2012 WL 441169 (S.D. Ohio Feb. 10, 2012) ("The fact that the ALJ did not entirely adopt either of the RFC opinions offered by treating and consulting physicians is not contrary to the Sixth Circuit's opinion in Hensley, because the ALJ's analysis explains the basis for his opinions. After all, the determination of a plaintiff's RFC remains the province of the ALJ."); *Angela K. C. v. Comm'r of Soc. Sec.*, No. 2:20-CV-5184, 2022 WL 109345, at *9 (S.D. Ohio Jan. 12, 2022). None of this denotes that there was an insufficiency in medical filings, so as to require the ALJ to seek additional evidence.

Contrary to Plaintiff's contention that the ALJ "played doctor" when there were insufficiencies in evidence, the ALJ considered the opinions of the State agency reviewers and fashioned an RFC based on the record as a whole. (Doc. 7 at 10). This is what the ALJ was supposed to do. *Angela K. C.*, 2022 WL 109345, at *10; *see also Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010); *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010), *report and recommendation adopted*, No. 1:09CV411, 2010 WL 3730981 (S.D. Ohio Sept. 8, 2010). He need not develop the record further. *See Ferguson v. Commissioner*, 628 F.3d 269, 274 (6th Cir. 2010) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." (quoting *Poe v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir.2009)).

Further, the Undersigned notes that Plaintiff was represented by counsel before the ALJ in this case. At the hearing, counsel did not indicate or suggest to the ALJ that any medical records were

missing from the administrative record, except for an unrelated physical medical issue, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records. (R. at 36, 37–38, 63). Because counsel did not inform the ALJ that Dr. Lovko, nor Dr. Sampson's medical opinions were insufficient, it was within reason for the ALJ to rest on the record at the time of hearing. *Campbell*, 2013 WL 1908145, at *8–9. For this additional reason, the Court finds that the ALJ did not fail to develop the record adequately. The ALJ did not err and remand is not warranted.

**C. Marijuana Use as a "Contributing Factor"**

In her third assignment of error, Plaintiff challenges the ALJ's treatment of her drug and alcohol use.

First, Plaintiff challenges the ALJ's decision because the ALJ cited marijuana use without "first properly evaluating the claim by ignoring the potential effect of substance use on [Plaintiff]'s impairments" as called for under the DAA sequential evaluation process and also because "the ALJ has also ran afoul of SSR 13-2p by implying that [Plaintiff]'s symptoms would improve in the absence of substance use." (Doc. 7 at 13).

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Social Security Ruling ("SSR") 13-2p sets forth the SSA's policies and DAA sequential evaluation process for considering whether drug addiction and alcoholism is a contributing factor material to the disability determination. Soc. Sec. Ruling 13-2p.; Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA), 2013 WL 621536. "It provides that, *if* the Agency determines that the claimant's substance abuse is a medically determinable impairment *and* that

the claimant is disabled when considering all the claimant's impairments, the Agency must then determine whether the claimant would be disabled if he or she stopped using drugs or alcohol." *Kawecki v. Comm'r of Soc. Sec.*, No. 4:25-CV-00933-DAP, 2026 WL 81754, at *10 (N.D. Ohio Jan. 12, 2026), *report and recommendation adopted*, No. 1:25-CV-00933, 2026 WL 304400 (N.D. Ohio Feb. 5, 2026) (citing SSR 13-2, 2013 WL 621536, at *2). Thus, SSR 13-2p only applies if first "evidence from acceptable medical sources . . . establish[es] that DAA is a medically determinable impairment(s)." SSR 13-2, 2013 WL 621536 at *3.

Here, the ALJ did not find that Plaintiff's substance abuse disorder, if any, was one of her medically determinable impairments. And Plaintiff offers no evidence that she had a medically determinable marijuana use disorder that should have been considered an impairment. Accordingly, the DAA sequential evaluation process does not apply.

Next, Plaintiff contends that the ALJ erred by assuming that Miller's mental disorder would improve in the absence of drug or alcohol use. (Doc. 7 at 13). In reviewing the persuasiveness of the prior administrative medical findings, the ALJ stated that the Plaintiff "uses marijuana, despite being warned of the [e]ffects of alcohol and marijuana on her mental health symptoms." (R. at 25; *see also* R. at 24 (citing 1124–25)). And the ALJ noted that the Plaintiff was told to abstain from alcohol. (R. at 24; *see also* R. at 24 (citing 1082)). These assertions are supported by the record. In Plaintiff's psychiatric consultation recommendations and treatment recommendations, Nurse Practitioner Shelby Stradling recommended Plaintiff "[a]bstain from alcohol and other drugs specifically other medications/drugs that cause CNS depression" and discussed with her the effects of using marijuana, alcohol, and other substances on menta health as well as their possible interactions with prescribed medications. (R. at 1087).

## IV. CONCLUSION

Based on the foregoing, the Undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner's decision denying benefits.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the district judge review the Report and Recommendation *de novo* and in a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: September 24, 2026

*/s/ Kimberly A. Jolson*
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE